**Ida Le EDDY, Appellant,**

v.

**OKLAHOMA HOTEL BUILDING COM-
PANY, a foreign corporation,
Appellee.**

**No. 5133.**

United States Court of Appeals
Tenth Circuit.

Nov. 17, 1955.

John Chiaf, Oklahoma City, Okl. (Cargill & Cargill and Charles Hill Johns, Oklahoma City, Okl., on the brief), for appellant.

Gus Rinehart, Oklahoma City, Okl. (Butler, Rinehart & Morrison, Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, HUXMAN, Circuit Judge, and SAVAGE, District Judge.

SAVAGE, District Judge.

Ida Le Eddy appeals from an order entered by the trial court at the close of her evidence directing a verdict for the defendant, Oklahoma Hotel Building Company.

Mrs. Eddy sought to recover damages for personal injuries sustained in a fall at the Biltmore Hotel in Oklahoma City, which is operated by the defendant. She charged in her complaint that she fell while descending the stairway leading from the lobby to the main entrance of the hotel; that the fall was caused by negligence of the hotel company in permitting the stairs to become worn and unsafe, by failing to have the stairway adequately lighted and by failing to provide handrails as required by ordinances of the City of Oklahoma City.

A brief summary of the evidence pertinent to the issues raised in this appeal will suffice. About 1 o'clock in the afternoon of June 2, 1952, while on her way

to attend a cooking school in downtown Oklahoma City, Mrs. Eddy entered the hotel to use the restroom and to see some friends who she thought might be there. She did not intend to become a guest of the hotel nor were her friends guests of the hotel. For some period of time the hotel had been the meeting place of a club of which Mrs. Eddy was an active member, and it was some of the members of her club that she hoped to encounter.

Mrs. Eddy entered the main entrance of the hotel from Grand Avenue and proceeded to the mezzanine floor where she used a pay toilet in the restroom. Thereupon, not finding any of her friends at the hotel, she made her way to the lobby floor and thence down a flight of stairs to a landing four feet deep and eleven feet wide. There were two steps below this landing leading to the exit from the hotel. The landing was not well lighted. She reached for a handrail and, finding none she thought she was at the ground level, walked forward and fell down the two remaining steps and was seriously injured. She had been in the hotel many times before the accident and was familiar with the stairway. She had, without difficulty, ascended the same stairs upon entering the hotel.

City ordinances were received in evidence which provided that a stairway of seven feet or more in width in any building except a dwelling shall be provided with a continuous intermediate handrail and further provided that, if enclosed, stairways shall be equipped with an adequate lighting system. The stairway in question was more than seven feet in width and did not have a center or intermediate handrail.

At the close of plaintiff's case the trial court directed the jury to return a verdict for the defendant upon the theory that the foregoing evidence did not make out a prima facie case of negligence on the part of defendant. It was the court's view that the plaintiff was not an invitee but a mere licensee, and that the only duty owed to her by the defendant was not to injure her willfully nor wantonly nor by active negligence.

The appellant contends that the court erroneously directed the verdict for the defendant under a misconception of the applicable Oklahoma law; that while in the hotel and particularly after patronizing the pay toilet she was an invitee; and that, even if she was only a licensee, the hotel company was charged with the duty of exercising ordinary care to avoid injuring her.

██ It is now the settled rule in Oklahoma that the owner of premises owes the duty of ordinary care to a licensee as well as to an invitee. It is, therefore, unnecessary to decide in which category Mrs. Eddy belongs. The requisite standard of care is the same in either event.

Statements may be found in some of the earlier Oklahoma cases in support of the concept that a landowner owes no greater duty to a bare licensee than to a trespasser. It was said that the owner "owes no duty except not wantonly or willfully to injure such person after his perilous position is discovered." See Midland Valley R. Co. v. Kellogg, 106 Okl. 237, 233 P. 716. But the Supreme Court of Oklahoma carefully reviewed the earlier cases in Julian v. Sinclair Oil & Gas Co., 168 Okl. 192, 32 P.2d 31, 36, and laid down the rule as follows:

"* * * In the light of the later decisions, we may now safely say that this court is committed to the rule that, under some circumstances, an owner or proprietor is charged with the duty of exercising ordinary care, to avoid injuring a licensee, which is that degree of care a person of ordinary prudence would usually exercise under the facts and circumstances of the particular case. Whether or not that has been done, under proper instructions, is a question of fact for the jury. * * *"

The Julian case was cited with approval and the rule there announced adhered to in the case of Dye v. Montgomery Ward & Co., 175 Okl. 567, 54 P.2d 182. The rule is well stated in the syllabus by the court·

"Where a person is granted express permission to use the premises of another for a use of his own, he is a licensee, and his rights are not to be determined by the rule applicable to trespassers, but as to him the owner is required to exercise ordinary care to avoid injury to him, and, in a case where such person is injured through a defective condition of the premises, the question as to whether the owner exercised such care is a question of fact for the jury. Julian v. Sinclair O. & G. Co., 168 Okl. 192, 32 P.2d 31.''

In Clinkscales v. Mundkoski, 183 Okl. 12, 79 P.2d 562, the court at page 563 of the opinion said:

"It is well settled that the owner of premises owes the duty to an invitee thereon to exercise ordinary care not to injure him. * * *

"However, if the deceased had occupied no higher status than that of a licensee, under the rule as it now exists in this state Mundkoski still owed him the duty of ordinary care, instead of only the duty to refrain from willful and wanton injury, as the rule formerly was stated. Such is now the rule in this state. See Julian v. Sinclair Oil & Gas Co., 168 Okl. 192, 32 P.2d 31, 36, and cases cited therein; Dye v. Montgomery Ward & Co., 175 Okl. 567, 54 P.2d 182. So for present purposes it is immaterial whether we consider the deceased an invitee or a licensee."

In addition, it should be noted that the proof presented by Mrs. Eddy tended to establish that the hotel company had failed to comply with the city ordinance which requires that certain described stairways be equipped with "a continuous intermediate handrail." A violation of this ordinance would constitute negligence per se. In Harbour-Longmire Building Co. v. Carson, 201 Okl. 580, 208 P.2d 173, it was said in the syllabus by the court:

"Where a city building ordinance requires handrails to be maintained on stairways in certain buildings, failure of the owner or operator of building to provide stairways with handrails constitutes negligence in itself, or negligence per se, but the question of whether or not such failure to provide handrails was the proximate or contributing cause of an injury is a question of fact for the jury."

Of interest is the case of Whitehead Coal Mining Co. v. Pinkston, 71 Okl. 124, 175 P. 364, 367, dealing with the question of the coal company's liability to a licensee alleged to have been injured as the result of the coal company's failure to comply with a statute requiring danger signals to be placed at the mine entrance. A second opinion was written upon re-hearing, in which the court said:

"In our judgment it was not necessary to allege or prove that the decedent was either a licensee or an invitee, in order to entitle the plaintiff to recover. The statute (section 3976, Rev.Laws 1910) is a police regulation enacted for the protection of the public in general. By its terms the mine owner owes to all classes of persons, whether licensee, invitee, or trespasser, the duty of seeing that danger signals be placed at the mine entrance, which shall be sufficient warning to all persons not to enter the mine.

"The petition alleges a violation of this statutory duty on the part of the defendant. It is well settled that the failure to perform a statutory duty imposed by a valid statute under the police power of the state for the protection of the public is negligence per se. Richardson v. El Paso Consol. Gold Mining Co., 51 Colo. 440, 118 P. 982. * * *"

The court committed error in sustaining the motion of the defendant for a directed verdict upon the ground that the plaintiff had failed to make out a prima facie case of negligence.

We do not foreclose consideration at another trial of questions not reached in this opinion, such as proximate cause, contributory negligence and whether the steps in question come within the purview of the city ordinance.

Reversed and remanded.