**Wanda BEATTY, Plaintiff in Error,**

**v.**

**O. L. DIXON and Mrs. O. L. Dixon, Defendants in Error.**

**No. 40732.**

Supreme Court of Oklahoma.

Nov. 2, 1965.

Jack L. Freeman, Oklahoma City, for plaintiff in error.

Donald F. Gust, Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, for defendants in error.

HALLEY, Chief Justice.

This action was instituted by Wanda Beatty, hereinafter referred to as plaintiff, against her parents, O. L. Dixon and Mrs. O. L. Dixon, hereinafter referred to as defendants, to recover damages for personal injuries sustained when the plaintiff slipped and fell down in the back doorway of the defendants' home. At the conclusion of all the testimony and evidence offered by the plaintiff, the trial court sustained defendants' demurrers to the evidence and judgment was entered that plaintiff take nothing.

Plaintiff contends that the evidence was sufficient to establish a prima facie case of negligence and that the case should have been submitted to the jury. On the issue of negligence there were but three witnesses called by the plaintiff to testify: the plaintiff and both defendants.

The plaintiff testified that she and her family were invited by the defendant, Mrs. O. L. Dixon, to take shelter in the defendants' storm cellar on May 21, 1961, because of a tornado alert. That the plaintiff and her family, the defendant Mrs. O. L. Dixon, and the plaintiff's sister with her family entered the storm cellar while it was raining quite heavily at about 7:00 p.m., but that the defendant, O. L. Dixon, stayed in the house. The storm cellar was located about twenty feet from the back doorway of the defendants' home, which opened directly to the outside from the kitchen. The kitchen floor was constructed of asphalt tile and there was a wooden thresh-

old, one concrete walk leading from the back doorway of the defendants' house to the storm cellar. The back doorway was on the north side of the house. The plaintiff testified further that her husband and brother-in-law left the cellar first; that the defendant, Mrs. O. L. Dixon, and the plaintiff's sister left next; and that she followed with the children about fifteen or twenty minutes thereafter. That she came up the cellar steps, walked up the concrete walk to the house, stepped up onto the back step, then stepped into the kitchen, which was wet and slippery, and "fell half in and half out of the house." She also testified that her father, O. L. Dixon, later told her that "the back door flew open while we were in the cellar and the wind blew the rain in and he swept it out with a broom but he didn't mop it up."

Plaintiff testified on cross-examination that her parents, O. L. Dixon and Mrs. O. L. Dixon, had resided in their same home for approximately ten years; that she had used their storm cellar as many as twenty times altogether; that she was completely familiar with the storm cellar, the concrete walk, the back entry into the house; and that when she came out of the storm cellar, it was more or less sprinkling. The walkway was wet, her shoes were wet, and the wooden threshold was wet, which she knew. That she held a plastic raincoat over her head as she opened the back door, but she didn't look at the floor as she stepped into the house. She further testified on cross-examination as follows:

"Q. These people, whoever they were, would have had to have walked from the storm cellar on the wet concrete driveway and then into the kitchen?

"A. Yes, sir.

*  *  *  *  *  *  *

"Q. Now, when they walked into the house, from their wet feet, they could have made tracks on the floor?

"A. Yes, sir.

"A. I didn't stop to think about it."

The defendant, O. L. Dixon, called as a witness by the plaintiff, did not remember the kitchen floor getting wet at any time while he was in the house, nor whether the back door as a matter of fact did blow open during the storm. He did not remember whether he did or did not sweep water off the kitchen floor. He did not remember the conversation as testified to by the plaintiff, but he testified that water always blew on the kitchen floor when someone went in or out the back door during a rain storm and the wind was out of the north. He also testified on cross-examination as follows:

"Q. If that door is open as you say, would people,—with the wind blowing from the north, she would also know water would come in through there?

\* \* \* \* \* \*

"Q. She would know as much about it as you would, that's my question, she was there many times and she seen it when it was raining and she was in the storm cellar and she knew as much about your place as you did, isn't that right?

"A. Well, she ought to."

The defendant, Mrs. O. L. Dixon, called as a witness by the plaintiff, testified that she and her eldest daughter and a granddaughter came out of the storm cellar at about the same time and went into the house through the back door to start supper. She did not notice water on the floor at that time. She also testified that the plaintiff came out of the storm cellar about fifteen or twenty minutes thereafter, and that as "she came to the door and just as she got to the door she just lunged and fell." She testified further as follows:

"Q. What did you notice at that time?

"A. Well, the floor was wet when Wanda came in because the door had been opened so many times and the wind and the rain was coming from the north and it did blow in, the floor was wet.

"Q. When did you first notice that?

"A. Well, I don't particularly know just when I noticed it, when she came in it was wet because you see we had all come in before her and the door being open the wind blew the rain in."

The facts of each particular case are, of course, controlling upon the question of negligence in respect of a dangerous condition upon the premises, and ordinarily the question whether an owner or occupant has been negligent in this respect toward a person whom he has invited upon the premises is to be decided by a jury. In such cases, as in other cases, however, if there is no dispute as to the facts and only one conclusion can be drawn from the evidence, the court can decide the question as a matter of law. 38 Am.Jur., Negligence §§ 102 and 356; and Pruitt v. Timme, Okl., 349 P.2d 4.

It is the settled rule in Oklahoma that the owner of premises owes the duty to an invitee thereon to exercise ordinary care not to injure him. This includes the duty to warn the invitee of any danger thereon of which the owner knows, or ought to know, and which is unknown to the invitee. Clinkscales v. Mundkoski et al., 183 Okl. 12, 79 P.2d 562. An invitation to enter upon the property of another may be either express or implied. In this case plaintiff was an invitee since she was expressly invited by the defendant, Mrs. O. L. Dixon, to enter upon their premises to take shelter in the defendants' storm cellar. Clinkscales v. Mundkoski et al., supra; Pruitt v. Timme, supra.

However, we think the correct rule in this case is set out in 65 C.J.S. Negligence § 50, wherein it is stated:

"The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be ob-

served by him in the exercise of ordinary care. The invitee assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers. * * *

"The basis of the inviter's liability for injuries sustained by the invitee on the premises rests on the owner's superior knowledge of the danger, and as a general rule he is not liable for an injury to an invitee resulting from a danger which was obvious or should have been observed by the invitee in the exercise of reasonable care, or from a condition which was as well known or as obvious to the invitee as to the inviter, or which the inviter had no reason to believe would not be discovered by the invitee. There is no duty to warn the invitee of any defect or danger which is as well-known to the invitee as to the owner or occupant, or which is obvious or which should be observed by the invitee in the exercise of ordinary care. * * *"

In City of Tulsa v. Harman, 148 Okl. 117, 299 P. 462, we held in the third paragraph of the syllabus:

"The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no legal duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious and should have been observed in the exercise of ordinary care."

And in Long Const. Co. et al. v. Fournier, 190 Okl. 361, 123 P.2d 689, we held that there was no obligation to warn an invitee, who knew the condition of a property, against patent and obvious dangers, and there was no actionable negligence in the absence of a duty neglected or violated.

In the present case the testimony was undisputed that water always blew on the defendants' kitchen floor when the back door was opened during a rain storm and the wind was out of the north. It was visible and apparent for all to see and plaintiff by her testimony was aware that the kitchen floor was wet when she fell. Her parents had lived in that same house for ten years. Plaintiff had used their storm cellar on many occasions. She was completely familiar with their home. When she came out of the storm cellar to go into the defendants' house, she knew that the walkway was wet, that her shoes were wet and that the wooden threshold was wet. It was still sprinkling. She also must have known that water had been tracked in on the kitchen floor by those preceding her into the house from the storm cellar. Therefore, there was no duty to reconstruct or alter the premises nor an obligation to warn plaintiff of the wet kitchen floor, which was as well-known to her as to the defendants, and there was no actionable negligence in absence of a duty neglected or violated.

We think that Jackson v. Land, Okl., 391 P.2d 904, is in point here. We there reversed a judgment rendered on a jury verdict in favor of the plaintiff for personal injuries incurred when she caught her toe and fell on defendants' driveway, which was cracked and slightly raised, during a rain storm. Plaintiff by her testimony had been aware of the condition of the driveway from November, 1960, to June 2, 1961, when she fell. The pertinent paragraphs of the syllabus in that case read as follows:

"The duty to keep premises reasonably safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee and would not be observed by him in the exercise of ordinary care.

"There is no obligation to warn an invitee who knew the condition of a property, against patent and obvious dangers, and there is no actionable

negligence in the absence of a duty neglected or violated."

There was testimony that the defendant, O. L. Dixon, told the plaintiff that the back door flew open while she was in the cellar and that the wind blew the rain in. That he swept it out with a broom but he didn't mop it up. This could have happened only before the defendant, Mrs. O. L. Dixon, and several others entered the kitchen through the back door and more than fifteen or twenty minutes before plaintiff fell. We do not feel that this testimony was sufficient to establish a prima facie case of negligence.

In Tweed v. First Nat. Bldg. Corp. et al., 203 Okl. 31, 218 P.2d 356, 359, the plaintiff brought suit against the defendants seeking damages for personal injuries sustained when he fell down a flight of stairs. The fact that plaintiff slipped and fell on the stairway and that a foreign substance was seen on the steps some thirty minutes before plaintiff's fall were the principal circumstances in proof relied on to establish negligence, and that the negligence caused the injury. We there held that plaintiff failed to make out a prima facie case of negligence and in the body of the opinion stated:

"In Lowden v. Friddle, 189 Okl. 415, 117 P.2d 533, 536, the court said: 'As pointed out by this Court in Gypsy Oil Co. v. Ginn, 152 Okl. 30, 3 P.2d 714, in discussing inferences of negligence and causal connection, an inference of negligence or causal connection must be based on something more than mere speculation or conjecture, that it is not sufficient to show a state of circumstances consistent with or indicating a mere possibility and to leave other possibilities of equal force and reason. The theory to be adopted must be the more probable and more reasonable to be adopted from the evidence. The theory cannot itself furnish the element that is missing in the evidence. The theory must be applied to evidence.'

"Obviously, herein, the presence of foreign matter on the steps at the time of their use by the plaintiff is an evidentiary fact essential to a finding of negligence and that the negligence caused injury. There was no direct evidence to establish this fact. If it may be inferred from the circumstances in proof that the steps were slick then to find a causal relation with plaintiff's injury this inference of fact must be made the basis of a further inference. An inference drawn from circumstances in proof may not in itself be treated as a circumstance in proof as a basis of a further inference. To add an inference to an inference to arrive at a conclusion is to depart from the evidence and reach into the field of speculation and conjecture."

▮ There was, of course, no direct evidence that the back door flew open while plaintiff was in the cellar, or that the defendant, O. L. Dixon, swept water from the kitchen floor with a broom but didn't mop it up. If it may be inferred from the circumstances in proof that the kitchen floor was wet because the defendant, O. L. Dixon, failed to mop it, then to find a causal relationship with plaintiff's injury this inference of fact must be made the basis of a further inference. It is elementary that an inference of fact cannot be based on another inference.

▮ Furthermore, an inference of negligence or causal connection must be based on something more than mere speculation or conjecture. It is not sufficient to show a state of circumstances consistent with or indicating a mere possibility and to leave other possibilities of equal force and reason. The theory to be adopted must be the more probable and more reasonable to be adopted from the evidence. Is it not more probable and more reasonable that the kitchen floor became wet and damp after the defendant, O. L. Dixon, swept it out as people tracked in water from the outside? Under this testimony, only by conjecture and speculation could a conclusion be reached that any

act or failure of the defendants to act was the proximate cause of plaintiff's injuries.

Under the above cited authorities and circumstances of this case, we are of the opinion and hold that the plaintiff failed to establish primary or actionable negligence on the part of the defendants.

Judgment affirmed.

DAVISON, BLACKBIRD, IRWIN, BERRY, HODGES and LAVENDER, JJ., concur.

JACKSON, V. C. J., concurs in result.

WILLIAMS, J., dissents.

WILLIAMS, Justice (dissenting).

I respectfully suggest that to my mind whether water was on the kitchen floor and was as obvious to plaintiff as to defendants was an appropriate subject of inquiry by a jury.

Article XXIII, Sec. 6, Constitution of Oklahoma, provides that: "The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

In the case of Safeway Stores, Inc., etc. et al. v. Feeback, Okl., 390 P.2d 519, we held as follows:

"A customer of a retail store injured in a fall caused by slipping on vegetables lying on the store floor may not recover damages from the owner or manager of the store without proof that such vegetables were negligently left there by owner or some employee or had been there for sufficient time after the latter had actual or constructive knowledge thereof to have removed it in the exercise of ordinary care."

Plaintiff here testified of effect defendant O. L. Dixon swept out the water but did not mop it up. A jury would have been warranted in further finding from the testimony that he knew, or should have known, that more water blew in on the floor, where plaintiff later fell, each time the kitchen door was opened by those returning from the cellar. These facts, to my way of thinking, established a situation which was converse to that in the Safeway Stores, Inc., v. Feeback case, supra, and warranted submission of the case to the jury.

Likewise, I believe it was a situation which was the converse of that in Safeway Stores, Inc., v. Criner, Okl., 380 P.2d 712, and submissible under the rule of the second paragraph of the syllabus thereof.

I consider the case of Jackson v. Land, Okl., 391 P.2d 904, to be distinguishable, because in that case, as recited in the opinion, a crack in the pavement which had existed for years was shown to have been known to plaintiff for some seven months.

In the case of St. Louis-San Francisco Ry. Co. et al. v. Williams, 176 Okl. 465, 56 P.2d 815, this Court said:

"An 'invitee' is one who possesses an invitation express or implied.

"Where a person invites or induces, expressly or by implication, another to come upon his premises, whether for business or any other purpose, it is his duty to be reasonably sure that he is not inviting him into danger, and he must use ordinary care and prudence not to injure him.

\* \* \* \* \* \*

"Article 23, § 6, of the Constitution of Oklahoma, is not merely declaratory of the common law, but requires that the defense of contributory negligence as to questions of fact, in all cases whatsoever, shall at all times be left to the jury and the finding of the jury upon this defense is conclusive upon the court."

See also 65 C.J.S. Negligence § 45 b, Condition of Property, pp. 526–532.

I respectfully dissent.